UNITED STATES of America,
Appellee,

v.

Donald POWERS, Appellant.

No. 72–1782.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1973.

Decided Aug. 13, 1973.

Lynn S. Castner, Minneapolis, Minn., for appellant.

John M. Lee, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before CLARK, Associate Justice; [*] HEANEY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

On June 27, 1972, a federal grand jury returned a four-count indictment against Donald Powers, charging him with violations of 18 U.S.C. § 495 in connection with the forgery and uttering of two United States Treasury checks. At the trial on the merits, a jury found him guilty as charged, and Powers now appeals that conviction. We affirm this conviction.

The record reveals that two Social Security benefit checks, one for $288.40 and one for $72.10, failed to reach their proper destination—a widow with four children. The checks subsequently turned up in the hands of one Paulette Anderson who cashed them in two Minneapolis supermarkets. At the trial, witness Anderson testified that defendant Powers had brought her the checks, talked her into cashing them and splitting the proceeds, and then driven her to the supermarkets to conduct the transactions. A clerk at one of the supermarkets had written down the license number of the automobile in which Paulette Anderson had left after cashing one of the checks; it was later identified as belonging to the defendant. At the trial, the defendant took the stand and testified to knowing nothing about any Treasury checks prior to his arrest, but the Government introduced rebuttal testimony to the effect that the defendant, shortly after his arrest and prior to being told any information about the forged checks, exclaimed: "You people have busted me for a couple of checks worth $350 when the government is spending $5,000 a year to send me to school."

* The Honorable Tom C. Clark, Retired Associate Justice of the United States Supreme Court, sitting by designation.

■ Appellant urges four grounds for reversal. He first argues that the indictment should have been dismissed because the Government deliberately presented only the hearsay testimony of a federal agent to the grand jury when first-hand testimony was readily available. Such a practice, it is urged, prevents the grand jury from fulfilling its traditional role as screening agency and, therefore, both threatens the integrity of the judicial system and deprives the appellant of his Fourth, Fifth, and Sixth Amendment rights. The Supreme Court long ago disposed of the constitutional objections to the use of mere hearsay in grand jury proceedings in Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), and this decision has been steadily followed by the Eighth Circuit ever since. See, e. g., United States v. Akin, 464 F.2d 7 (8th Cir.), cert. denied, 409 U.S. 981, 93 S.Ct. 315, 34 L.Ed.2d 244 (1972). Nevertheless, appellant argues that we should adopt the view of the Second Circuit which has narrowed the broadly permissive tone of Costello recently through an exercise of its supervisory power over court officers. Appellant suggests the grand jury would have found such first-hand testimony to be less than credible and, therefore, might have refused an indictment.

In a series of cases beginning with United States v. Umans, 368 F.2d 725 (2d Cir. 1966), cert. granted, 386 U.S. 940, 87 S.Ct. 975, 17 L.Ed.2d 872, cert. dismissed as improvidently granted, 389 U.S. 80, 88 S.Ct. 253, 19 L.Ed.2d 255 (1967), that court struck at "excessive" use of hearsay as tending to destroy the protection against unwarranted prosecution which ought to be afforded by a grand jury, and recently reversed a conviction where the hearsay testimony of a federal agent, "wittingly or unwittingly," appeared to be an actual eye-witness account and thus misled the grand jury. United States v. Estepa, 471 F.2d 1132 (2d Cir. 1972). Whatever may be the merits of the Second Circuit's approach, which has not yet been adopted by this

circuit, the case at bar does not fall within its purview. Even in the Second Circuit, the rule remains that:

Indictments obtained principally or wholly upon the basis of hearsay evidence, even though direct testimony was available, will not be dismissed unless it appears that dismissal is required to protect the integrity of the judicial process. [United States v. Leibowitz, 420 F.2d 39, 42 (2d Cir. 1969).]

Here, there was no claim and no evidence in the record to suggest that the grand jury was misled into believing that the agent had first-hand knowledge of all that he related. Absent such a circumstance, indictments are not open to attack on the grounds that mere hearsay was used before the grand jury.

■ Second, noting that the alleged crime had been committed within the State of Minnesota, appellant challenges the failure of the trial judge to apply the Minnesota state rule regarding accomplice testimony, found in Minn.Stat. § 634.04, which forbids conviction based solely on the uncorroborated evidence of an accomplice. He places primary reliance on an extension of the doctrine found in Erie Ry. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) as requiring the application of the local statute in the absence of a controlling federal statute. This reliance is grossly misplaced, for Erie has no application whatsoever to federal criminal prosecutions. As this circuit has frequently held, it is "well-settled that a conviction can rest on the uncorroborated testimony of a codefendant or accomplice." United States v. Smith, 464 F.2d 221, 222 (8th Cir. 1972). In any event, the testimony of Powers' accomplice was circumstantially corroborated by the notation of the defendant's license number on one of the forged Treasury checks and by observations of other witnesses.

■ Third, the appellant argues that it was a violation of his Fifth and Sixth Amendment rights for the trial judge to refuse to permit his counsel to partici-

pate in the voir dire examination of prospective jurors regarding race bias. As the appellant himself acknowledges, the court conducted the voir dire, but did, upon request of defense counsel, "inquire of the jury panel whether the defendant's race, whether the defendant being a black person, would affect members of the jury's ability to treat the defendant fairly and equally and to discharge their duties as jurors." Two jurors were excused as a result of their responses to this question. Appellant, nevertheless, claims error. There is none.

■ As a general matter, under F.R. Cr.P. 24(a), the trial court has discretion either to permit counsel to conduct voir dire or to conduct the examination itself; in the latter event, the court may permit counsel to submit questions which the court, at its discretion, may ask. The constitutionality of Rule 24(a) was specifically upheld by this circuit in United States v. Anderson, 433 F.2d 856, 858 (8th Cir. 1970). Of course, the court's discretion in this area is not unlimited.

■ For more than four decades, it has been the rule in federal courts that a trial court *must* inquire as to possible racial bias of the veniremen when the defendant is a member of a racial minority. Aldridge v. United States, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931). Yet, as recently noted by the Supreme Court in Ham v. South Carolina, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed. 2d 46 (1973), neither the supervisory power of the Supreme Court over lower federal courts as exercised in *Aldridge*

nor the Due Process Clause of the Fourteenth Amendment as applied to the state courts in *Ham* require the trial court "to put the question in any particular form, or to ask any particular number of questions on the subject, simply because requested to do so by petitioner." 409 U.S. at 527, 93 S.Ct. at 830. If the trial court need not have asked any further questions than a general one regarding racial bias, *a fortiori* it need not have permitted the participation of counsel in further questioning.

■ Fourth and finally, appellant attacks the sufficiency of the evidence supporting the verdict. It is not the responsibility of an appellate court to reweigh the evidence or to determine the credibility of witnesses. A jury verdict must be sustained if there is substantial evidence, taking the view most favorable to the government as prevailing party, to support it. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Kye, 411 F.2d 120 (8th Cir. 1970). Here the evidence clearly appears to be substantial. In addition to the direct testimony of the defendant's accomplice, Paulette Anderson, implicating him in the crime, corroborating circumstantial evidence placed him at the scene of the crime and the defendant himself made an incriminating statement after his arrest. These pieces of evidence fit together into a pattern which justifies our opinion that, on the whole record, there is ample evidence to sustain the jury's verdict of guilty.

Affirmed.